IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

OHIO VALLEY ENVIRONMENTAL
COALITION, et al.,

                    Plaintiffs,

v.                                                    CIVIL  ACTION  NO.  3:08-0979

UNITED STATES ARMY CORPS
OF ENGINEERS, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Intervenor-Defendants Loadout, LLC and Coal River Mining,

LLC's (hereinafter jointly referred to as "Loadout") Motion for Relief from November 24, 2009,

Order (Doc. 171).  For the following reasons, the motion is **DENIED**.

**Background**

This action was filed by complaint of the plaintiffs on August 7, 2008.  Since that time, the

case has transformed at several junctures, with the addition and termination of parties and claims,

and the entry of various orders by this Court granting or denying the parties' requested relief.  In

particular, on November 24, 2009, this Court entered a Memorandum Opinion and Order, which

granted summary in judgment in favor of the defendants on several substantive claims; granted

summary judgment to the plaintiffs with respect to their claim that the public notices for the § 404

permits for Loadout's Nellis Surface Mine and Foal Coal Company, LLC's ("Fola") Ike Fork

Surface Mines were inadequate; and held in abeyance the plaintiffs' motion for summary judgment

on their claim that the United States Army Corps of Engineers ("the Corps") lacked a reasoned basis

or substantial evidence to conclude that selenium discharges from Fola's Ike Fork mines would be individually or cumulatively insignificant.

The effect of the November 24, 2009, Order was initially stayed for 60 days, or until January 25, 2010.  It has since been the subject of additional stays.  First, on December 28, 2009, the Court granted an unopposed motion for a limited stay filed by Fola, which allows that company to continue to use the valley fills on which it had previously been allowed to conduct mining activity prior to the entry of the Court's November 24, 2009, Order.  This limited stay allows Fola to conduct such filling and other mining activity pending further order by this Court.  Subsequent to the Court's December 28, 2009, Order granting Fola's motion, on January 5, 2010, Loadout filed the instant request. The Court then stayed the effect of its November Order on Loadout's operations, pending resolution of this motion.

The Corps has informed the Court that it will not take a formal position on the motion.  The plaintiffs, on the other hand, have filed a response in opposition.

## Standard of Review

Loadout moves the Court, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, to grant relief from its November 24, 2009, Order and allow the company to "re-commence work and fill in the remaining jurisdictional waters in Dave Fork 1 and Dave Fork 2 Valley Fills[,]" where it contends "substantial filling of waters of the U.S. have already occurred." *Loadout's Mot. for Relief* (Doc. 171), 1.  Although not specifically identified as such, the Court construes Loadout's Rule 60 motion as a request for relief pursuant to Rule 60(b)(6), which allows the Court to "relieve a party or its legal representative from a final judgment, order, or proceeding for ... (6) any [] reason that justifies relief." *F. R. Civ. Pro. 60(b)(6).*

2

The Court has broad discretion when considering a Rule 60(b)(6) motion. *See, e.g., Werner v. Carbo*, 731 F.2d 204, 206 (4th Cir. 1984); *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863 (1998) ("Rule 60(b)(6), upon which respondent relied, grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).").  Nonetheless, the Fourth Circuit has consistently held that "[t]he remedy provided by the Rule ... is extraordinary and is only to be invoked upon a showing of exceptional circumstances." *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1979). The Court considers Loadout's motion with this directive in mind.

## Discussion

Loadout's motion for relief is premised upon a few major arguments: (1) because the remand of its permit was for the limited purpose of correcting the procedural flaw in its public notice and summary judgment was granted to the intervenor-defendants on all substantive issues, granting the requested relief would not interfere with the November Order's purpose or conclusions, because it would not affect the re-noticing of Loadout's permit; (2) because there has been significant work conducted within the valley fills Loadout seeks to re-commence working in, the relevant environmental harm has already occurred and should not preclude a stay; (3) Loadout's motion should be granted because it would not result in unfair prejudice to the plaintiffs; (4) the motion should be granted because Loadout has invested significant financial resources to prepare the Dave Fork 1 and Dave Fork 2 Valley Fills for mining and such investment was made with the expectation that mining would be allowed; (5) because Loadout will not be able to mine in a practicable manner, without the requested relief, the public interest weighs in favor of staying the November 24, 2009,

Order; and (6) the Court should grant the requested relief because a stay would be consistent with previous orders entered by this Court and within the Southern District of West Virginia.

Many of Loadout's arguments can be dealt with simultaneously. First, the Court finds Loadout's arguments: (1) that a stay would not affect the plaintiffs' procedural rights, as vindicated by the November 24, 2009, Order, (2) that the relevant environmental harm has already occurred, and (3) that a stay would not prejudice the plaintiffs unconvincing.[1]

As discussed in the November 24, 2009, Order, "[a litigant] who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he received the procedure the substantive result would have been altered. All that is necessary is to show that the procedural step was connected to the substantive result." *Sugar Cane Growers Coop. of Florida v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002). Therefore, a plaintiff seeking to vindicate a procedural right need not demonstrate that the exercise of such right will change an agency's ultimate decision. Instead, the plaintiff need only show that a procedural error occurred and that some procedural remedy exists. *See South Carolina Wildlife Fed'n v. H.B. Limehouse,* 549 F.3d 324, 330 (4th Cir. 2008) ("The party seeking an injunction need not show that injunction of the state defendant would lead directly to redress of the asserted injury, but only that relief will preserve the federal procedural remedy.") (citing *Massachusetts v. EPA,* 549 U.S. 497 (2007)).

The procedural right at the center of the plaintiffs' motion for summary judgment was their right to meaningfully comment on Loadout and Fola's § 404 permits. The Court found such right was violated and, in its Order, sought to remedy this error by specifically directing the Corps to re-

---

[1]As noted, the fact that the plaintiffs (1) find the environmental harm that would result from granting the requested relief significant, and (2) object to Loadout's motion plays a significant role in the Court's rejection of these arguments.

issue an amended notice for each permit.  Further, the Court ordered the Corps to (1) receive and respond to comments on the revised notices, and (2) reconsider each permit with any new comments in mind.  *See* Doc. 165, 54.  To insure the plaintiffs' right to comment is meaningfully protected, this re-noticing and comment must occur *before* further environmental harm is authorized under the permit.  *See, e.g. National Wildlife Federation v. Marsh,* 585 F.Supp. 985, 993 (D.C. D.C. 1983) ("[I]f the public is not apprised of the rational behind a proposed decision, or if the public is informed of the rationale only after the close of the comment and hearing period, then the agency cannot be said to have provided a realistic opportunity for public hearings or meaningful comments."); 40 C.F.R. § 1500.1 ("NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken."); *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by monetary damages and is often permanent or at least of long duration, i.e, irreparable."); *Nat'l Audubon Soc'y v. Dep't of Navy*, 422 F.3d 174, 201 (4th Cir. 2005) (same).

To date, Loadout's Nellis Surface Mine permit has not been re-noticed.  Further, Loadout has provided no evidence showing that it has requested the Corps re-notice its permit or that the company has otherwise attempted to correct the procedural flaw identified in the November 24, 2009, Order.  Instead, Loadout requests that the Court allow it to continue to operate under its procedurally-flawed permit.

The Court declines to do so.  Allowing Loadout to continue operations at the Nellis Surface Mine without requiring re-noticing would prejudice the plaintiffs because it would deprive them of

their right to meaningfully comment.[2]  Additionally, although Loadout is correct that substantial

environmental harm did occur under the Nellis Surface Mine permit prior to the Court's November

24, 2009, Order,[3] this harm is not complete and the harm that would result from granting Loadout's

motion is not insignificant.  *See Pl.'s Mem. in Opp.* (Doc. 176), 2-4.

　　　If the Court granted Loadout's request, it would allow for the completion of the Dave Fork

1 and Dave Fork 2 Valley Fills, which would result in the filling of approximately 5,400 linear feet

of stream.  *Loadout's Combined Decision Document* (Doc. 86-3), 3.  When combined with the

existing fill at Wilderness Fork Valley Fill, this would result in the filling of approximately 9,211

linear feet of stream, or approximately 82.5% of the total permitted stream to be filled.  *Id.*

Although, as  noted, the parties disagree as to (1) the exact amount of stream in the Dave Fork area

that has been filled to date, and (2) about whether (and how) the permanent sediment pond should

_____

　　　[2]In its motion, Loadout stresses the fact that it provided notice of its intention to mine in
March 2008, as evidence that granting its requested relief would not prejudice the plaintiffs.
However, the notice Loadout provided was the result of a December 17, 2008, Order by this
Court, *see* Doc. 104, and, on March 23, 2008, Loadout agreed not to discharge any additional
dredge and fill material in jurisdictional waters of the Dave Fork Valley Fills or the Mech Fork
Valley Fill, outside of a small 40-foot culvert necessary for a road, without additional notice to
the plaintiffs, in exchange for the plaintiffs' agreement not to seek a TRO.  *See* Doc. 171-1
(April 1, 2009, letter memorializing this agreement).  According to the parties, no filling of
jurisdictional waters or subsequent notice of an intention to fill the jurisdictional waters at the
Dave Fork Valley Fills has occurred since that time.  As a result, the Court finds that Loadout
has not provided sufficient evidence to obviate the plaintiffs' claim of prejudice.

　　　[3]Although the parties disagree as to the exact percentage of filling that has occurred to
date, they agree: (1) that the permitted filling in the Wilderness Fork Valley Fill is complete, and
(2) that some filling of the Dave Fork 1 and Dave Fork 2 Valley Fills occurred between March
11 and March 23, 2008. As a result, it is evident that, at a minimum, 3,811 linear feet, or
approximately 34% of the total linear feet of stream permitted to be filled under Loadout's
permit, were filled prior to the November 24, 2009, Order.  *Loadout's Combined Decision
Document* (Doc. 86-3), 3 (providing that filling at the Wilderness Fork Valley Fill will result in
the filling of 3,811 linear feet of jurisdictional waters).  The Court finds that such filling
represents "substantial" environmental harm.

be counted when determining environmental harm,[4] regardless of how the pond is counted and regardless of the exact amount of stream filled to date, the Court finds that allowing Loadout to complete the Dave Fork Valley Fills would result in significant environmental harm. This is because the Dave Fork 1 and Dave Fork 2 watersheds are "unaltered, fully functional watershed[s] with good quality terrestrial and aquatic habitat," *Id.* at 31; Loadout attests that the portions of these watersheds that have been filled are "principally in the lower gradient areas of the watershed," *Vines' Affidavit* (Doc. 171-1, Ex. C), ¶ 11; and the sediment pond which has been completed is located at the toe (or lower end) of the valley fills. As a result, the portions of the Dave Fork watersheds that remain relatively unimpacted appear to be high quality, upper gradient stream. This fact, combined with the fact that the impacts that have occurred to date in the upper portions of these watersheds – partial timber clearing and grubbing, *see id.*, ¶ 5; *Loadout's Reply Mem.* (Doc. 182), 2, are short-term, or temporary, impacts, leads the Court to conclude that granting Loadout's motion would result in significant, permanent environmental harm.

Thus, the Court **FINDS** that allowing Loadout to continue to fill the Dave Fork valleys and to cause such environmental damage without: (1) the plaintiffs' consent, or (2) a strong evidentiary showing of the economic dependence of the local community on the Nellis Surface Mine is not appropriate. Loadout has provided neither and the Court therefore **FINDS** its motion should be **DENIED**.

―――――――――――――――――

[4]In their Memorandum in Opposition, the plaintiffs argue that "these 907 feet of impacts are actually somewhat environmentally beneficial, and should not even be counted in the environmental harm analysis." *Pl.'s Mem. in Opp.* (Doc. 176), 2. The defendants, however, contend that "in Plaintiffs' attempt to calculate the stream impacts (in feet) for each of the Dave Fork Valley Fills, it seems as if Plaintiffs may have double counted the stream impacts of the pond, resulting in their calculations incorrectly reflecting a lesser percentage of impacts in the valley fill areas." *Loadout's Reply Mem.* (Doc. 182), 3.

The Court **FINDS** this ruling is consistent with previous Opinions and Orders by this Court and with Judge Goodwin's decision in *Ohio Valley Environmental Coalition v. Bulen*, 410 F.Supp.2d 450 (S.D. W.Va. 2004). First, this Court generally only grants the type of relief requested by Loadout either when the plaintiffs consent, or when there is a strong evidentiary showing that a particular stay is warranted. This is because: (1) as discussed *supra,* the procedural rights that would be affected by such a stay belong to the plaintiffs, and (2) the irreparable injury the Court considers in these cases is the injury to the plaintiffs caused by the relevant environmental harm. *See generally* Doc. 295 (3:05-cv-0784). As a result, whether the plaintiffs agree to forfeit certain rights, or to withstand particular environmental harm, is an important factor in the Court's calculus.

For example, in the April 20, 2007, Memorandum Opinion and Order in the *OVEC v. U.S. Army Corps of Engineers* case (3:05-cv-0784), which is cited by both parties in their briefing, and which granted a limited stay of a permanent injunction allowing several mining companies to continue to work in those valley fills already partially constructed, the Court specifically noted the plaintiffs' lack of opposition as a factor in its decision. *Id.* at 2-3 ("[The] harm to the Intervenors is purely a temporary, economic harm, which ordinarily would not warrant a stay pending appeal. Here, however, Plaintiffs do not oppose a stay ... As a result, this factor favors granting [such] a stay[.]") (internal citations omitted). The salience of the plaintiffs' consent is particularly evident in this Memorandum Opinion and Order because, there, the Court decided whether to (1) grant a general stay of its permanent injunction, or (2) grant a limited stay consistent with an agreement between the parties entered into during the pendency of the suit. The Court chose the latter option, the one to which the plaintiffs consented.

This Court's decision to deny Loadout's motion is also consistent with the decisions made

by this Court, during the pendency of this action, with regard to Fola and its Ike Fork permits. With respect to Fola, the Court's most recent Order granted the company's *unopposed* motion for relief from the November 24, 2009, Order. *See* Doc. 170. This motion is distinguishable from the instant motion (1) because it was unopposed, and (2) because it simply continued a then-existing stay which allowed Fola to operate in certain valley fills and which had been ordered prior to the Court's November 24, 2009, decision. *Id.* Thus, the Court's decision to grant Fola's motion does not provide strong support for Loadout's requested relief.

Additionally, the Court's decision to deny Loadout's motion is consistent with its October 31, 2008, Memorandum Opinion and Order, in which the Court granted the plaintiffs' motion for a preliminary injunction against Fola and then stayed this injunction with respect to certain valley fills. *See* Doc. 77. This Memorandum Opinion and Order is distinguishable because: (1) the stay granted therein represented the Court's adoption of a suggested stay proposed by the plaintiffs, *see* Doc. 77, 12, and (2) this suggestion followed a three-day hearing, held October 22-24, 2008, during which Fola presented ample evidence to establish the unique economic dependence of Clay County on the Fola Coal Company. As recognized by the plaintiffs, this unique relationship and dependence was a significant factor warranting the requested relief. *See generally id.*

Recognizing the significant role the plaintiffs' opposition, or lack thereof, has played in this Court's decisions, the stay which most closely resembles the type of relief requested by Loadout is the modification and further stay of the Court's October 31, 2008, permanent injunction, which the Court granted on August 21, 2009. *See* Doc. 160. This decision provides the strongest support for Loadout's motion because the Court granted Fola the stay despite opposition from the plaintiffs.

Still, the August 21, 2009, decision is distinguishable herein. First, this limited stay was

granted prior to the Court's November 24, 2009, Order, which provided a decision on the merits and conclusively identified Loadout and Fola's § 404 permits as procedurally-flawed.  Further, in resolving to grant a limited stay to Fola, the Court relied upon the substantial evidence the company presented, over the pendency of the litigation, to demonstrate the peculiar reliance of the Clay County economy on its Ike Fork permits.  Such evidence was presented over the three-day hearing held October 22-24, 2008; at a second hearing on August 20, 2009; and in the multiple affidavits Fola attached to its motions, affidavits which attested (1) that, at each step, the company continued to adhere to its SMCRA mining plan, (2) to the amount of time the particular relief requested would allow the Ike Fork Surface Mines to continue to operate, (3) to the number of employee jobs the requested relief would preserve, and (4) to the fact that employees would find employment opportunities scarce in Clay County, in the case of denial and subsequent layoffs.  Using this evidence and testimony, Fola convinced the Court that a limited stay was warranted, despite the plaintiffs' opposition.[5]  *See, e.g.,* Doc. 160, 3-4.

Finally, the instant decision can be distinguished from, and thus is consistent with, Judge Goodwin's decision to stay the effect of the preliminary injunction he granted in *Ohio Valley Environmental Coalition v. Bulen* on the valley fills and surface impoundments on which construction had been commenced.  *See* 410 F.Supp.2d 450.  In that case, Judge Goodwin heard a challenge to Nationwide Permit 21 ("NWP 21").  Specifically, the plaintiffs identified and

---

[5]Fola established: that it is the only mining operation in the county; that the company employs approximately 400 underground and surface miners in Clay County, all of whom depend upon the validity of the Ike Fork permits; that these miners' average wage is $62,500, making them a substantial part of the local economy; that Fola is the largest employer, public or private, in Clay County; and that approximately 65% of the county's budget is comprised of direct and severance taxes collected from Fola.

challenged eleven projects approved by the Corps under NWP 21. *Id.* at 456. The case represented a challenge to the Corps' procedure in authorizing projects, not to particular authorizations or permits that were issued by the Corps. *Id.* at 470-71. As a result, the broader "has-been-commenced" standard used to determine the parameters of the stay granted in *Ohio Valley Environmental Coalition v. Bulen* was not the result of individualized permit-based analysis. Therefore, the standard is not equally applicable herein.

In conclusion, the critical factors the Court considers when resolving this motion are not merely whether the pertinent valley fills have been commenced or whether the mining company has expended financial resources with the expectation of recouping these resources through mining. *See, e.g.,* Doc. 295 (3:05-cv-0784) ("[The] harm to the Intervenors is purely a temporary, economic harm, which ordinarily would not warrant a stay pending appeal."); *Amoco Production Co.*, 480 U.S. at 545 ("Environmental injury, by its nature, can seldom be adequately remedied by monetary damages and is often permanent or at least of long duration, i.e, irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment."). Instead, this Court has and continues to consider additional factors, including: the significance of the environmental harm that would be authorized under the requested stay; any procedural or other rights affected by the requested stay; the plaintiffs' opposition, or lack thereof; and whether the company requesting the stay has provided a sufficient evidentiary basis – in light of the specific facts pertinent to the permit at issue – to conclude that the public interest warrants relief. Consideration of such factors attempts to achieve a balance between the importance of the contribution of coal to this State's economy and the value of preserving and protecting the State's tremendous natural resources. Further, consideration of such factors leads the Court to **DENY**

Loadout's motion, for, in light of the plaintiffs' opposition, and in the absence of any unique economic relationship between the Nellis Surface Mine and Boone County, neither Loadout's expenditures to date nor the public interest warrant granting the motion.

The motion is therefore **DENIED** and the Court's November 24, 2009, Memorandum Opinion and Order remains in full effect insofar as Loadout's operations are concerned. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 12, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE